UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

COURTNEY KIMBLE,

     Plaintiff,

v

CLASSIC TURNING, INC.,
a Michigan corporation,

     Defendant.

Case No.
Hon:

James K. Fett (P39461)
Fett & Fields, P.C.
407 North Main Street, 2nd Floor
Ann Arbor, MI 48104
734-954-0100
Fax: 734-954-0762
jim@fettlaw.com
Attorney for Plaintiff

## PLAINTIFF'S COMPLAINT AND JURY DEMAND

Plaintiff, through counsel, Fett & Fields, P.C., states the following claims against Defendant:

### NATURE OF CLAIM

1. This is a *42 U.S.C. §1981* and *Elliot-Larsen Civil Rights Act, MCL § 37.2022, et. seq.*, action brought for Hostile Work Environment, Discrimination, and Retaliation based on Plaintiff's race and protected activity.

### JURISDICTION, VENUE, AND PARTIES

2. Plaintiff invokes the jurisdiction of this Court pursuant to *28 U.S.C. §1331* and *28 U.S.C. §1367.*

3. The events giving rise to this cause of action occurred in the Eastern District of Michigan.

4. The amount in controversy exceeds $75,000.00, exclusive of interest, costs and attorney fees.

5. Venue is proper pursuant to *28 U.S.C. §1391(b)(1)* and *(b)(2).*

6. Plaintiff Courtney Kimble ("Plaintiff") is a Black Male, a citizen of the United States and the State of Michigan, and employee at Defendant Classic Turning, Inc.

7. Defendant, Classic Turning, Inc. ("Defendant"), is a manufacturing company with its principal place of business in Jackson County, Michigan.

## FACTS

8. Defendant Classic Turning, Inc., is a manufacturing company providing aerospace and military components, among other products.

9. Plaintiff Courtney Kimble began his employment with Defendant in September of 2019.

10. Out of over 150 employees, Plaintiff is only one of two Black employees working the floor.

11. Shortly after beginning his employment, Plaintiff learned of the violent undercurrent that permeates Defendant's workplace, including a bullet flying through the window and across the factory, threats to "shoot up the place" scrolled on bathroom walls, and nails spread throughout the parking lot.

12. Plaintiff also soon learned of a racial undercurrent permeating the workplace.

13. Plaintiff would often hear white co-workers using racial slurs, including the "N-word", slurs for Hispanics and Arabs, and other racially derogatory comments.

2

14.     However, as a good family man just trying to provide for his family, Plaintiff did not initially report the use of the "N-word" and other slurs for fear of retaliation.

15.     Instead, he simply made the reasonable request for these white co-workers to not use the "N-word" and other slurs.

16.     Unfortunately, this only antagonized his white co-workers.

17.     Then the murder of George Floyd occurred in May 2020 and a wave of social activism swept the country.

18.     However, the fight for racial justice did not sit well with a group of white co-workers (the "Group").

19.     This Group and its ringleader, Kenneth Day ("Day"), had a close relationship with Human Resource Director Gauge Aebersold.

20.     Emboldened by their relationship with HR Director Aebersold, the Group began focusing their animosity towards Plaintiff and those who supported or associated with him.

21.     One such associate was harassed until he quit.

22.     The racial harassment also intensified, including racial slurs and comments that "they should hang them all" in reference to Black protestors.

23.     Then Day began hanging a confederate flag sweatshirt from his locker on a daily basis to racially taunt Plaintiff.

24.     At this point, the racial tension and harassment reached a boiling point and Plaintiff, not knowing of HR Director Aebersold's support of the Group, decided a visit to Human Resources was in order.

25.     So he did, simply hoping Defendant would address the workforce and make it clear that racial slurs and racial harassment were not tolerated in the workplace.

3

26.    Of course, Plaintiff would be bitterly disappointed.

27.    Upon meeting with HR Director Aebersold, Plaintiff reported the racial tension permeating the workplace between Plaintiff and the Group of white co-workers, that racial slurs were routinely used, and that a white co-worker was using the confederate flag as a racial symbol to taunt him on a daily basis.

28.    However, out of fear for retaliation, Plaintiff refused to give the names of the perpetrators.

29.    Despite having just been told of some white employees' use of racial slurs and other racial harassment, HR Director Aebersold told Plaintiff he did not think anyone at the company was racist.

30.    HR Director Aebersold went on to state that he had grown up around people who had flown the confederate flag, but claimed he did not know what the confederate flag symbolized.

31.    Shocked at the response he was getting, Plaintiff explained to HR Director Aebersold that the confederate flag symbolized slavery and racial oppression, and, as a Black person, it was particularly offensive, especially since Day was using the confederate flag to racially taunt Plaintiff.

32.    HR Director Aebersold then told Plaintiff he would not allow employees to bring the confederate flag into the workplace, but would allow confederate flags on vehicles in the company parking lot.

33.    At this point, neither Day nor other members of the Group had confederate flags on their vehicles.

34.    Thereafter, HR Director Aebersold, *without Plaintiff's identification of the perpetrators*, walked over to his crony Day and the Group of white employees who harbored racial

animosity towards Plaintiff and told them they could not bring the confederate flag into the workplace, but it would be allowed on their vehicles in the company parking lot.

35.     Thus, HR Director Abersold effectively endorsed Day's and other employees' racial harassment by continuing to allow them to deliberately use the confederate flag to racially taunt Plaintiff on company property.

36.     No action was taken to address the racially hostile work environment or make it known that racial slurs and racial harassment would not be tolerated.

37.     With HR Director Aebersold's permission to racially harass Plaintiff in hand, the Group of white co-workers placed the confederate flag on their vehicles and Day began deliberately parking his vehicle immediately in front of Plaintiff's work area so that Plaintiff was subjected to racial taunting on a daily basis.

38.     This continued until, for some unknown reason, Plaintiff was transferred across the factory.

39.     Refusing to give up his relentless campaign of racial taunting, Day began parking his vehicle near Plaintiff's new entrance, on the opposite side of the factory, so that Plaintiff would still have to view this symbol of slavery and racial oppression on a daily basis before he even stepped a foot into the building.

40.     This daily racial taunting took its toll, and one day Plaintiff relayed to his new supervisor that he had to leave early due to the emotional distress of the continued racial slurs and harassment.

41.     Apparently unaware of what had been occurring, the new supervisor immediately went with Plaintiff to HR Director Aebersold to address the racial harassment.

42.     Plaintiff once again told HR Director Aebersold about the use of racial slurs in the

workplace and the racial harassment he was experiencing, including the fact that a white co-worker had continued to racially harass him with the confederate flag by deliberately parking where Plaintiff would have to view it.

43. Yet once again, HR Director Aebersold reaffirmed his endorsement of the racial harassment by his crony and threatened Plaintiff, stating, "We don't want you to mess up your career."

44. Of course, HR Director Aebersold again refused to address the racially hostile work environment and make it known racial slurs and racial harassment would not be tolerated.

45. Thus, the racial slurs persisted and the iconic symbol of slavery and racial oppression continued to fly high in Plaintiff's face on a daily basis.

46. But HR Director Aebersold's egregious conduct was not limited to the endorsement of the racial harassment.

47. Defendant's practice is to give employees periodic reviews.

48. These reviews occur generally 90 days after hire, 6 months after hire, one year after hire, and then annually or semi-annually thereafter.

49. It is standard for employees to receive raises at these reviews.

50. Upon information and belief, all other employees received their reviews on schedule, along with a raise if their performance warranted one.

51. Yet HR Director Aebersold, because of his discriminatory and retaliatory animus, never gave Plaintiff a review, thereby denying him pay raises warranted by his performance

52. In fact, Plaintiff did not receive a review or raise for nearly two and a half years, when HR Director Aebersold was forced to give Plaintiff a review by the new President.

53. For his efforts, HR Director Aebersold was promoted to Plant Manager, in addition

6

to maintaining his position as HR Director.

## COUNT I
## HOSTILE WORK ENVIORNMENT BASED ON RACE IN VIOLATION
## OF 42 U.S.C. §1981

54.     Plaintiff incorporates by reference the preceding paragraphs.

55.     Plaintiff is a Black male.

56.     Plaintiff was subjected to severe and/or pervasive harassment.

57.     The harassment was based on Plaintiff's race.

58.     The racial harassment was unwelcome.

59.     The racial harassment created a hostile work environment and substantially interfered with Plaintiff's employment.

60.     Defendant knew, or should have known, of the racial harassment and allowed it to continue.

61.     As a direct and proximate result of Defendant's discriminatory conduct, Plaintiff has suffered, and will continue to suffer emotional distress, including humiliation, loss of reputation, outrage, and economic loss.

WHEREFORE, Plaintiff requests that this Court enter judgment against Defendant for:

a.      Economic damages;

b.      Non-economic damages to compensate for the mental and emotional distress, outrage, and humiliation he has suffered, and continues to suffer, as a result of Defendant's illegal actions;

c.      Costs, interest and reasonable attorney fees as provided by 42 U.S.C. §1988;

d.      Punitive damages; and

e.      Such other equitable relief as the Court deems just.

7

## COUNT II
## RACE DISCRIMIATION IN VIOLATION OF 42 U.S.C. §1981

62.     Plaintiff incorporates by reference the preceding paragraphs.

63.     Plaintiff is a Black male.

64.     Defendant discriminated against Plaintiff by denying him pay raises.

65.     Defendant's denial of pay raises was because of Plaintiff's race.

66.     As a direct and proximate result of Defendant's discriminatory conduct, Plaintiff has suffered, and will continue to suffer emotional distress, including humiliation, loss of reputation, outrage, and economic loss.

WHEREFORE, Plaintiff requests that this Court enter judgment against Defendant for:

    a.     Economic damages;

    b.     Non-economic damages to compensate for the mental and emotional distress, outrage, and humiliation he has suffered, and continues to suffer, as a result of Defendant's illegal actions;

    c.     Costs, interest and reasonable attorney fees as provided by 42 U.S.C. §1988;

    d.     Punitive damages; and

    e.     Such other equitable relief as the Court deems just.

## COUNT III
## RETALIATION IN VIOLATION OF 42 U.S.C. §1981

67.     Plaintiff incorporates by reference each of the preceding paragraphs.

68.     Plaintiff engaged in protected activity by reporting a racially hostile work environment.

69.     Plaintiff took an adverse action against Plaintiff by denying him pay raises.

70.     Defendant's denial of pay raises was because of Plaintiff's protected activity.

8

71.     As a direct and proximate result of Defendant's retaliatory conduct, Plaintiff has suffered, and will continue to suffer emotional distress, including humiliation, loss of reputation, outrage, and economic loss.

WHEREFORE, Plaintiff requests that this Court enter judgment against Defendant for:

a.     Economic damages;

b.     Non-economic damages to compensate for the mental and emotional distress, outrage, and humiliation he has suffered, and continues to suffer, as a result of Defendant's illegal actions;

c.     Costs, interest and reasonable attorney fees as provided by 42 U.S.C. §1988;

d.     Punitive damages; and

e.     Such other equitable relief as the Court deems just.

## COUNT IV
## HOSTILE WORK ENVIRONMENT BASED ON RACE IN VIOLATION OF MCL § 37.2202

72.     Plaintiff incorporates by reference the preceding paragraphs.

73.     Plaintiff is a Black male.

74.     Plaintiff was subjected to severe and/or pervasive harassment.

75.     The harassment was based on Plaintiff's race.

76.     The racial harassment was unwelcome.

77.     The racial harassment created a hostile work environment and substantially interfered with Plaintiff's employment.

78.     Defendant was aware of the racial harassment and allowed it to continue.

79.     As a direct and proximate result of Defendant's discriminatory conduct, Plaintiff has suffered, and will continue to suffer emotional distress, including humiliation, loss of reputation, outrage, and economic loss.

9

WHEREFORE, Plaintiff requests that this Court enter judgment against Defendant for:

   a.   Economic damages;

   b.   Non-economic damages to compensate for the mental and emotional distress, outrage, and humiliation he has suffered, and continues to suffer, as a result of Defendant's illegal actions;

   c.   Costs, interest and reasonable attorney fees as provided by MCL § 37.8202;

   d.   Exemplary damages; and

   e.   Such other equitable relief as the Court deems just.

## COUNT V
## DISCRIMINATION BASED ON RACE IN VIOLATION OF MCL § 37.2202

80.   Plaintiff incorporates by reference the preceding paragraphs.

81.   Plaintiff is a Black male.

82.   Defendant discriminated against Plaintiff by denying him pay raises.

83.   Defendant's denial was because of Plaintiff's race.

84.   As a direct and proximate result of Defendant's discriminatory conduct, Plaintiff has suffered, and will continue to suffer emotional distress, including humiliation, loss of reputation, outrage, and economic loss.

WHEREFORE, Plaintiff requests that this Court enter judgment against Defendant for:

   a.   Economic damages;

   b.   Non-economic damages to compensate for the mental and emotional distress, outrage, and humiliation he has suffered, and continues to suffer, as a result of Defendant's illegal actions;

   c.   Costs, interest and reasonable attorney fees as provided by MCL § 37.8202;

   d.   Exemplary damages; and

   e.   Such other equitable relief as the Court deems just.

## COUNT VI
## RETALIATION IN VIOLATION OF MCL § 37.2701

85.     Plaintiff incorporates by reference the preceding paragraphs.

86.     Plaintiff engaged in protected activity by reporting a racially hostile work environment.

87.     Defendant took an adverse action against Plaintiff by denying him pay raises.

88.     Defendant's denial was because of Plaintiff's protected activity.

89.     As a direct and proximate result of Defendant's discriminatory conduct, Plaintiff has suffered, and will continue to suffer emotional distress, including humiliation, loss of reputation, outrage, and economic loss.

WHEREFORE, Plaintiff requests that this Court enter judgment against Defendant for:

a.     Economic damages;

b.     Non-economic damages to compensate for the mental and emotional distress, outrage, and humiliation he has suffered, and continues to suffer, as a result of Defendant's illegal actions;

c.     Costs, interest and reasonable attorney fees as provided by MCL § 37.8202;

d.     Exemplary damages; and

e.     Such other equitable relief as the Court deems just.

Respectfully submitted,

*/s/ James K. Fett*
By:  James K. Fett (P39461)
Fett & Fields, P.C.
407 North Main Street, 2nd Floor
Ann Arbor, MI 48104
734-954-0100
jim@fettlaw.com

Dated:  October 20, 2022                    Attorneys for Plaintiff

11

# JURY DEMAND

NOW COMES Plaintiff Courtney Kimble, through his counsel Fett & Fields, P.C., and

hereby demands trial by jury in the above-captioned matter.

*/s/ James K. Fett*

By:  James K. Fett (P39461)
Fett & Fields, P.C.
407 North Main Street, 2nd Floor
Ann Arbor, MI 48104
734-954-0100
jim@fettlaw.com

Dated:  October 20, 2022                    Attorneys for Plaintiff